## UNITED STATES ex rel. YEE LOY GEE v. PIERCE, Chinese Inspector.

(Circuit Court of Appeals, Second Circuit. February 26, 1923.)

No. 153.

1. **Aliens** &=32(13)—**Decision of board of special inquiry should be in accordance with the actual belief of its members from the evidence.**

Where a board of special inquiry decided on the record as made that the claim of a Chinese applicant for admission that he was the son of a native-born American was not established, because of inconsistent testimony given by the alleged father some years before, and ordered applicant's exclusion, but the members of the board in fact believed from the evidence that the claimed relationship existed, it was their duty to decide in accordance with such belief and admit the applicant.

2. **Aliens** &=32(13)—**Letter of Chinese inspector to Department of Labor may be considered as part of record.**

A letter written by the Chinese inspector in charge at a port, forwarded with the record on appeal from the decision of a board of special inquiry excluding an immigrant, and stating that, while the decision was thought to be compelled by the evidence, it was contrary to the personal belief of the members of the board, may be considered as evidence of the fact stated.

3. **Aliens** &=32(13)—**Decision of board of inquiry admitting an immigrant is conclusive.**

Decision of a board of special inquiry in favor of admission of an immigrant is conclusive, and not reviewable by the Department of Labor.

Appeal from the District Court of the United States for the Southern District of New York.

---

&=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Habeas corpus, on relation of Yee Fook Sing, by his next friend, Yee Loy Gee, against F. S. Pierce, Chinese Inspector in Charge at Port of New York. From an order discussing the writ, relator appeals. Reversed.

The case arises under the Immigration Laws, though the relator was excluded as coming into the United States in violation of the Chinese exclusion laws. The sole issue was whether the relator was the son of Yee Low Gee, a native American, who sued out the writ in his behalf. The relator was given a hearing before a special board of inquiry upon his arrival at the port of New York on April 13, 1922. At that time he made proof of citizenship personally and by his alleged father. This was corroborated by an alleged half-brother and a friend; all the witnesses were Chinese. On an earlier entrance into the United States in 1915, the alleged father told the authorities that he had been married only once and that his son was then 7 years old. The relator is 23. On the present hearing he said that he then suppressed an earlier marriage, from which the relator was born, because his first wife was dead, and he did not wish to mention that fact. The father's present wife and her son were admitted in 1916, and then testified that the father had been married only once.

For these inconsistencies, and other improbabilities in the story, the board of inquiry excluded the relator on April 17, 1922, on the ground that he failed to prove that he was the son of the alleged father. A rehearing was had and new evidence submitted, and a new board, in part differently constituted, reaffirmed the exclusion on April 21, 1922. The relator then appealed to the Secretary of Labor. The Chinese inspector in charge at New York on April 26, 1922, made up the record on the appeal on April 26, 1922, and recommended that the board's decision should be sustained. So far there was nothing unusual in the proceedings. However, on April 28, 1922, the inspector in charge, in remitting the record, with his recommendation, to the Commissioner of Immigration, added a letter in which he said: "While the board states it believes that the claimed relationship does not exist this decision is based upon the record as it stands; whereas, as a matter of fact, the board does believe that the claimed relationship exists; that the applicant is the son of his father; but, because of the statement made at a prior entrance of the father, when he stated that he had never been married before coming to this country with his present wife, the board had no alternative but to reject the applicant on the record as presented."

The record so remitted was reviewed by a board of review of the Secretary of Labor, who recommended that the exclusion be affirmed, which was ordered by the Assistant Secretary of Labor on May 19, 1922. Thereupon the writ was issued out of the District Court.

Stefano Miele and F. A. Castellano, Jr., both of New York City (Clement L. Bouve and A. Warner Parker, both of Washington, D. C., of counsel), for appellant.

Wm. Hayward, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before HOUGH and MAYER, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] Were it not for the letter of the Chinese inspector in charge at New York, when remitting the record to the Commissioner General, we should scarcely feel justified in interfering with the order of the District Court. There were inconsistencies in the testimony of the witnesses, and the truth might obviously lie on either side of the issue. Everything in such a case turns upon what impression the wit-

nesses make on the tribunal which is charged under the statute with the decision. However, that letter discloses facts which, if true, seem to us to put the whole matter in a quite different light. Taking those facts as true for the moment, the board of inquiry, though formally finding that the relator was not the son of the American-born Chinese, in fact decided the contrary.

In some way not disclosed they supposed themselves, because of the inconsistent stories told by the father and by the stepmother, bound to record a finding contrary to their real decision on the single relevant issue. In that they, of course, were in error. As in any other case, there are no regulative canons for the determination of a question of fact. Inconsistencies may be explained and improbabilities met by the mere weight of the testimony. In this particular case there was indeed, nothing suspicious in the father's explanation to any one familiar with the notions of primitive people. The mention of a dead person's name is very generally taboo in primitive culture. But we have nothing to do with the propriety of the board's actual decision; it is enough that the statute gives them the final word.

[2] The evidence of the board's mistake was good enough; it was incorporated into the record itself, and emanated from the official superior of the members, to whom it had presumably come from them themselves. It makes no difference how it did come; being the declaration of such a person, it was evidence of the fact. These proceedings need not be conducted with the strictness of an action or suit. The courts have again and again sanctioned the admission of evidence against aliens which was not competent at law, so long as the substance of a fair hearing is preserved. We can scarcely apply such a loose procedure to exclude immigrants and decline to give them its benefit when it works for them. Especially would it be unfair, after submitting Chinese to the not too lenient administration of the immigration and exclusion laws, to deny them what they are entitled to in very right and substance. It is not necessary to say that the inspector's letter of April 28, 1922, was an official record admissible in a court of law; but we hold that in these proceedings it is probative of the facts which it contains.

Such being the case, the relator was never properly excluded at all; he should have been admitted. The procedure of exclusion is laid down in sections 15, 16, and 17 of the Immigration Act (Comp. St. §§ 4289¼hh–4289¼ii). Under sections 15 and 16 it is provided that immigration inspectors shall board all incoming vessels and inspect immigrants; they may detain for examination any whom they suspect of being ineligible. Any alien, who after such an examination shall not appear to the examining inspector beyond doubt to be eligible for entrance, shall be detained for examination by a board of special inquiry. Section 17 prescribes that "such boards shall have authority to determine whether an alien who has been duly held shall be allowed to land or shall be deported."

[3] As we view it, this section makes conclusive a unanimous finding of the board in favor of admission and to disturb it the Secretary of Labor has no power. Now, it is true that the finding was for ex-

clusion; but the record on its face showed that the finding was erroneous, and that the board should have entered precisely the contrary finding. While, then, the Assistant Secretary had jurisdiction of the appeal, he should have corrected the finding by making it accord with the true decision of the board, the tribunal which alone had any power to pass upon the issue. In substance, however, the case was one over which he had no supervisory jurisdiction, because the board had really decided that the relator had proved his case. In affirming the erroneous finding, it therefore appears to us that the Assistant Secretary disregarded an error which he should have corrected, and assumed a jurisdiction which he did not possess.

Thus we conclude that the writ should not have been dismissed, and that the order of the District Court was erroneous. Ordinarily, in such a case, under Chin Yow v. U. S., 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, the proper practice is for the court to determine for itself whether the alien is entitled to admission. That presupposes, however, that, while the exclusion by the immigration authorities has been invalid, the question of the alien's admissibility remains open. As we look at the case, that is not the situation here. On the contrary, the alien's right to admission was finally established by the only tribunal having power in the premises. Therefore there is no propriety in retaining jurisdiction over the cause to decide what no court has jurisdiction to consider. The proper order is that the relator be discharged.

The order of the District Court will therefore be reversed, and an order will pass discharging the relator.